IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MILTON L. BICKHAM, | ) | CASE NO. 3:19-cv-00010 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## I.  Introduction

Plaintiff Milton L. Bickham ("Plaintiff" or "Bickham"), acting *pro se*,[1] seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for social security benefits.  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).   This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

On July 15, 2019, Bickham filed his brief.[2]  Doc. 18.  On September 13, 2019, Defendant filed his Brief.  Doc. 20.  Bickham's appeal pertains to his 2017 application for supplemental security income ("SSI") benefits.  As discussed below, Bickham had an earlier application, which was filed in 2013.  Benefits were awarded in connection with the 2013 application but, as indicated below, those benefits were terminated in 2016 following a continuing disability review.

---

[1] At the hearing and when seeking review of the hearing decision before the Appeals Council, Bickham was represented by an attorney.  *See e.g,* Tr. 30, 51, 298, 395-398.

[2] Bickham's initially filed brief (Doc. 9) was stricken because it was filed prematurely (Doc. 11).

1

Bickham did not appeal from the termination of benefits determination but thereafter filed the 2017 application that is the subject of this appeal.

Bickham's arguments for reversal and remand in this appeal are not clear and, in many instances, Bickham makes statements and refers to various propositions of law, e.g., malicious prosecution and causes of action for benefits under ERISA, which appear unrelated to the issues before this Court in his appeal. Doc. 18, pp. 1-4. Considering the lack of substance contained in Bickham's brief, the Court may deem Bickham's arguments for reversal and remand waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted).

In the event that the Court does not deem Bickham's arguments waived, the undersigned, in light of Bickham's pro se status, has endeavored to decipher from his brief the arguments he is attempting to raise. Having liberally construing Bickham's pro se brief, the undersigned reads Bickham's appeal as (1) a challenge to the ALJ's treatment of his 2017 application as a new application versus a reopening of his prior claim; (2) a challenge to the ALJ's decision not to adopt the prior disability decision, which was based on medical records from Louisiana; and/or (3) a claim that the ALJ did not adequately develop the record. *See* Doc. 18, p. 3, ¶¶ 8-14 (Bickham indicates that the New Orleans' social security office instructed him to apply at the Toledo office to get his back payments; the Toledo office placed him in the system as a "new beginner" as if he had never applied for SSI benefits before, refused to look at paperwork from New Orleans and medical records from another state, informed him that his medical records did not work in Toledo; he was born in New Orleans and his paperwork was in Louisiana. Bickham

also refers referring to statutes of limitations and reasons why claims are not barred.) Giving Bickham the benefit of the doubt, the undersigned has considered these arguments.

For the reasons discussed more fully below, the undersigned recommends that the Court **AFFIRM** the Commissioner's decision.

## II. Procedural History

### A. 2013 SSI application

On January 14, 2013, when Bickham was living in Louisiana, he filed an application for SSI benefits. Tr. 30, 113, 117. In a February 21, 2014, decision (Tr. 113-125), Administrative Law Judge Mary Gattuso ("ALJ Gattuso") found Bickham had severe impairments of chronic liver disease, substance addiction disorder, affective disorder, anxiety disorder, and personality disorder and she found him disabled since January 14, 2013, the date the application was filed. Tr. 119, 124. In that decision, ALJ Gattuso concluded that "[m]edical improvement is expected with appropriate treatment. Consequently, a continuing disability review [CDR] is recommended in 12 months." Tr. 125. Following a CDR, medical improvement was found in November 2016 and Bickam's SSI benefits were terminated at that time. Tr. 30, 142-143, 333. Bickham did not appeal that decision. Tr. 30, 55-56, 333.

### B. 2017 SSI application

Bickham protectively filed[3] an application for SSI benefits on February 1, 2017. Tr. 30, 301-316. He alleged a disability onset date of January 14, 2013. Tr. 30, 311. Bickham's alleged disabling impairments were initially reported to be "unknown." Tr. 185, 335. When seeking reconsideration, Bickham reported that he was disabled due to increased anxiety. Tr. 190, 348.

---

[3] The Social Security Administration explains that "protective filing date" is "The date you first contact us about filing for benefits. It may be used to establish an earlier application date than when we receive your signed application." http://www.socialsecurity.gov/agency/glossary/ (last visited 10/7/2019).

3

Following initial denial (Tr. 185-187) and denial on reconsideration (Tr. 190-191), Bickham requested a hearing before an Administrative Law Judge (Tr. 192-193). A hearing was conducted by Administrative Law Judge Paul Sher ("ALJ") on April 23, 2018. Tr. 51-97. On July 26, 2018, the ALJ issued an unfavorable decision. Tr. 27-50. In his decision, the ALJ found that the period of January 14, 2013, through November 3, 2016, when Bickham's benefits were terminated without an appeal being filed, would not be re-adjudicated and, although Bickham alleged disability beginning in January 2013, there was no basis for reopening the prior decisions/determinations. Tr. 30. The ALJ found that there was new and material evidence showing a change in circumstances and, therefore, he concluded that he was not bound by the findings of the prior ALJ. Tr 30-31. The ALJ concluded that Bickham had not been under a disability within the meaning of the Social Security Act since February 1, 2017, the date the application was filed. Tr. 32, 44.

Bickham requested review of the ALJ's decision. Tr. 298, 396-398. On November 26, 2018, the Appeals Council denied Bickham's request for review, making the ALJ's July 26, 2018, decision the final decision of the Commissioner. Tr. 1-6.

### III. Evidence

As discussed above, Bickham's arguments are not entirely clear. Additionally, while Bickham attaches a few records to his brief (Docs. 18-1 through 18-4) – mostly notices from the Social Security Administration – he does not cite to medical evidence in support of his appeal.

Considering Bickham's lack of reliance on and/or citation to specific record evidence, the undersigned provides a brief summary of Bickham's personal, vocational, educational and medical evidence. A more complete discussion of the record evidence is found in the ALJ's July 26, 2018, decision. Tr. 33-43.

4

Bickham was represented at the April 2018 administrative hearing and testified.  Tr. 53, 59-88.  A Vocational Expert also testified at the hearing.  Tr. 88-93.

Bickham was born in 1965.  Tr. 61.  He was 52 years old at the time of the hearing and living in Toledo.  Tr. 59, 61.  He graduated from high school.  Tr. 64, 88.  When he was 14 years old, he was involved in a fight with New Orleans' police officers.  Tr. 87.  Per Bickham, he was hit in the head by the police with batons and hospitalized as a result.  Tr. 68, 87.  Since turning 19 years of age, Bickham has been incarcerated on and off for about 25 years.  Tr. 67, 74, 81.  Bickham stopped working on December 31, 2015.  Tr. 335.  While Bickham had some past work, the ALJ found there was no past relevant work.  Tr. 65-67.

Approximately three to four years before coming to Toledo, Bickham lived in New Orleans.  Tr. 63.  He originally traveled to Ohio because a friend's mother had passed away and he was going to help his friend move to New Orleans but he ended up not going back to New Orleans because he lost his benefits.  Tr. 63, 909-910.

About a year prior to the hearing, Bickham had been evicted from the place he was renting because he could not pay the rent.  Tr. 60-61.  However, he was continuing to occupy the premises by breaking into the house with his prior landlord's knowledge.  Tr. 60-61, 75, 77-78.  His prior landlord gave him some work to help keep him off the streets and from going to jail.  Tr. 61, 78-79.  Bickham's former landlord checked on Bickham and Bickham sometimes ate at her house.  Tr. 75.

Bickham relayed that he was unable to work because of his mental health problems and his attitude.  Tr. 67-68, 341.  Bickham has been banned from social security offices.  Tr. 151, 255, 258.  Also, the Zepf Center, the facility where Bickham receives mental health treatment, has called security on him because they felt he was scaring them based on how he was talking.

5

Tr. 85-86. Bickham indicated that he also had physical problems, noting he has pain in his side related to his Hepatitis C. Tr. 73.

## IV. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 416.920, *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy. *Id.*

## V. The ALJ's Decision

In his July 26, 2018, decision, the ALJ made the following findings:[4]

1. Bickham had not engaged in substantial gainful activity since February 1, 2017, the application date. Tr. 33.

2. Bickham had the following severe impairments: personality disorder; bipolar disorder; alcohol abuse; and cocaine abuse. Tr. 33. In addition, Bickham had the following non-severe impairments: chronic liver disease; hepatitis C; and bronchitis. Tr. 33-34.

3. Bickham did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 34-36.

4. Bickham had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple instructions; perform simple, routine, and repetitive tasks but not at a production rate pace, such as an assembly line; adapt to routine changes in the workplace that are infrequent and easily explained; he can interact rarely with supervisors, and coworkers (rarely meaning less than occasional, but more than never); and never interact with the general public; and no working in teams or tandem. Tr. 36-43.

5. Bickham has no past relevant work. Tr. 43.

---

[4] The ALJ's findings are summarized.

6. Bickham was born in 1965 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. Tr. 43.

7. Bickham had at least a high school education and was able to communicate in English. Tr. 43.

8. Transferability of job skills was not an issue because he did not have past relevant work. Tr. 43.

9. Considering Bickham's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Bickham could perform, including industrial cleaner, stores laborer, and hand packager. Tr. 43-44.

Based on the foregoing, the ALJ determined that Bickham had not been under a disability since February 1, 2017, the date the application was filed. Tr. 44.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a

8

reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

**A.     The undersigned recommends that the Court AFFIRM the Commissioner's decision**

As indicated above, construing Bickham's pro se brief liberally, the undersigned reads Bickham's appeal as (1) a challenge to the ALJ's treatment of his 2017 application as a new application versus a reopening of his prior claim; (2) a challenge to the ALJ's decision not to adopt the prior disability decision, which was based on medical records from Louisiana; and/or (3) a claim that the ALJ did not adequately develop the record. For the reasons discussed below, the undersigned recommends that the Court find no merit to any of these arguments and affirm the Commissioner's decision.

**1.   The ALJ properly considered Bickham's 2017 application as a new application**

Under the regulations, reopening a prior determination or decision is not mandatory. *See* 20 C.F.R. § 416.1487(a) (indicating that "[a] determination or decision made in your case which is otherwise final and binding *may* be reopened and revised by us[]"); 20 C.F.R. § 416.1488 (indicating that "[a] determination, revised determination, decision, or revised decision *may* be reopened[]") (emphasis supplied).

Here, the ALJ recognized that Bickham had a prior SSI claim, which was filed on January 14, 2013, and approved in a written ALJ decision on February 21, 2014. Tr. 30, 55-56. Further, as indicated by the ALJ, in November 2016, Bickham's SSI benefits were terminated following a finding of medical improvement on continuing disability review. Tr. 30. Bickham

9

did not appeal that determination. Tr. 30, 55. The ALJ concluded that there was no basis upon which to reopen the prior decisions/determinations pertaining to this 2013 application.

Considering the foregoing, the undersigned finds that the ALJ did not err by not reopening Bickham's prior disability determination and treating his 2017 application as a new application.

### 2. The ALJ did not err by not adopting the prior decision

In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit held, "Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d 837, 842 (6th Cir. 1997). The Social Security Administration, in AR 98-4(6), explained how the Social Security Administration would apply *Drummond* to decisions within the Sixth Circuit. AR 98-4(6), *Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II and XVI of the Social Security Act*, 1998 WL 283902 (June 1, 1998). As stated in AR 98-4(6):

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method of arriving at the finding.

*Id.* at 3.

More recently, in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (2018), the Sixth Circuit examined *Drummond* and the principles of res judicata when reversing a district court's decision which had reversed a denial of benefits on the basis that the "'principles of res judicata' announced in *Drummond* appl[ied] only when they favor an individual applicant, not the government, in a subsequent proceeding." *Id*. at 930. The Sixth Circuit concluded that the

district court was incorrect because "[t]he key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications—apply to individuals *and* the government." *Id.* at 931. Also, the court found that, "At the same time, [those principles] do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.*

In reaching its decision, the Sixth Circuit stated that "*Drummond* correctly held that res judicata may apply to administrative proceedings." *Id.* at 933. Thus, were an individual to file a second application for the same time period covered by a first application, res judicata would bar that claim absent justification for revisiting that prior decision. *Id.* However, the court went on to explain that "[r]es judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Id.* (internal citations omitted).

Here, the ALJ acted consistently with the foregoing principles when rendering his decision. The ALJ considered the prior favorable decision from 2014 but concluded there was new and material evidence. Tr. 30-31, 33, 36. Considering that evidence, the ALJ found a change in circumstances and, therefore, concluded that he was not bound by that prior decision. Tr. 30-31, 33, 36. Bickham's 2017 application covered a different time period than his earlier 2013 application and there was new evidence. Tr. 30. Consistent with *Early*, the ALJ took a fresh look at that new application and considered the new evidence relevant to that application. Tr. 33-43. Considering the foregoing, the undersigned concludes that the ALJ did not err by determining that he was not bound by the prior 2014 decision.

11

### 3. The ALJ did not err in his duty to develop the record

An ALJ is responsible for "ensuring that every claimant receives a full and fair hearing[.]" *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). An ALJ has a special, heightened duty to develop the record only under special circumstances, such as "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with the hearing procedures[.]" *Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. 2008) (citing *Lashley*, 708 F.2d at 1051-1052). However, "[a]bsent such special circumstances . . . the claimant bears the ultimate burden of proving disability." *Id.* at 459.

In this case, Bickham has not shown the existence of special circumstances warranting a finding that the ALJ was under a heightened duty to develop the record. He was represented by counsel at the April 23, 2018, hearing. Tr. 53. Additionally, Bickham's request to leave the record open to allow for another psychological evaluation was granted. Tr. 55-58, 93-96, 394. The ALJ agreed to leave the record open to allow Bickham to obtain the psychological evaluation and submit any other evidence that Bickham was aware of. Tr. 96. The report from that psychological evaluation was submitted to and considered by the ALJ. Tr. 40-41, 909-920. Considering the foregoing, the undersigned finds that the ALJ had no heightened duty to develop the record. Furthermore, the ALJ did not err in his duty to ensure that Bickham received a full and fair hearing.

### VII. Conclusion and Recommendation

For the reasons explained herein, the undersigned finds that the ALJ did not err. Moreover, Bickham has failed to argue or demonstrate that the decision is not supported by

12

substantial evidence.  Accordingly, the undersigned recommends that the Court **AFFIRM** the Commissioner's decision.

Dated:  October 7, 2019

*/s/ Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).